UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-9830 CAS (MANx) | Date | March 8, 2012 |
|---|---|---|---|
| Title | CALIFORNIA MEDICAL TRANSPORTATION ASSOCIATION; ET AL. v. TOBY DOUGLAS; ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| CATHERINE JEANG | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**      **(In Chambers:) ORDER RE: SCOPE OF PRELIMINARY INJUNCTION**

## I.      INTRODUCTION AND BACKGROUND

On November 29, 2011, plaintiff California Medical Transportation Association, Inc. ("CMTA") filed the instant action against Toby Douglas, Director of the California Department of Health Care Services (the "Director") and Kathleen Sebelius, Secretary of the U.S. Department of Health and Human Services (the "Secretary"). Plaintiffs filed their First Amended Complaint ("FAC") on December 29, 2011. The FAC adds GMD Transportation, Inc. and Lonny Slocum as plaintiffs.

The California Department of Health Care Services ("DHCS") is a California agency charged with the administration of California's Medicaid program, Medi-Cal. The Secretary is responsible for administering the Medicaid program at the federal level. Through her designated agent, the Centers for Medicare and Medicaid Services ("CMS"), the Secretary is responsible for reviewing and approving policy changes that states make to their Medicaid programs.

Plaintiff CMTA is a trade association representing the interests of non-emergency medical transportation ("NEMT") providers in the State of California. Plaintiff GMD Transportation, Inc. ("GMD") is an NEMT provider participating in the Medi-Cal program, providing approximately 2,500 NEMT rides per month. Plaintiff Lonny Slocum ("Slocum") is a Medi-Cal beneficiary with significant health difficulties including high blood pressure, congestive heart failure, kidney failure, and chronic

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-9830 CAS (MANx) | Date | March 8, 2012 |
|---|---|---|---|
| Title | CALIFORNIA MEDICAL TRANSPORTATION ASSOCIATION; ET AL. v. TOBY DOUGLAS; ET AL. | | |

obstructive pulmonary disease.  Slocum requires dialysis three times per week and is confined to a wheel chair.  He uses NEMT services to get to his treatments.

On March 25, 2011, California Governor Edmund G. Brown Jr. signed into law Assembly Bill 97 ("AB 97"), the health budget trailer bill for California fiscal year 2011–2012.  AB 97 enacted significant payment reductions for many classes of services provided under the Medi-Cal program.  Most significantly for the purposes of the instant action, AB 97 enacted California Welfare and Institutions Code § 14105.192, which authorizes the Director to reduce the Medi-Cal payment rates for various services, including NEMT, effective June 1, 2011.  Pursuant to Welfare and Institutions Code § 14105.192(n), the Director is required to seek any federal approvals necessary prior to implementing the rate reduction.

DHCS submitted proposed State Plan Amendment ("SPA") 11-009 to CMS on June 30, 2011, seeking federal approval of the rate reduction and incorporation of that reduction into California's Medi-Cal State Plan.  On September 27, 2011, CMS issued a letter to DHCS requesting additional information concerning the proposed rate reduction.  This Request for Additional Information ("RAI") focused on the impact of the rate reduction on access to services.  DHCS responded with an "Access Analysis" and a plan for monitoring access.  On October 27, 2011, in a letter from the Associate Regional Administrator of the Division of Medicaid & Children's Health Operations, CMS provided notice to the Director and DHCS that it had approved the SPA.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

*O*

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-9830 CAS (MANx) | | Date | March 8, 2012 |
|---|---|---|---|---|
| Title | CALIFORNIA MEDICAL TRANSPORTATION ASSOCIATION; ET AL. v. TOBY DOUGLAS; ET AL. | | | |

Plaintiffs allege that CMS's approval of the SPA was in violation of 42 U.S.C. § 1396a(a)(30)(A) ("Section 30(A)"),[1] the Supremacy Clause,[2] and the Due Process Clause of the 14th Amendment to the U.S. Constitution.[3]  FAC ¶ 42.  Plaintiffs further allege that the Secretary's approval of the SPA violated the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 et seq. because the Secretary failed to consider certain factors including the impact of the rate reduction on access to and quality of NEMT services.  Id. ¶ 47.

On January 10, 2012, the Court issued an order granting a preliminary injunction. That order stated, in pertinent part:

> Defendant Toby Douglas, Director of the California Department of Health Care Services, his employees, his agents, and others acting in concert with him shall be, and hereby are, enjoined and restrained from violating federal law by implementing or otherwise applying the reduction on Medi-Cal reimbursement for non-emergency medical transportation services on or after June 1, 2011, pursuant to Assembly Bill 97 enacted by the California Legislature in March 2011, as codified at California Welfare and Institutions Code § 14105.192.

Dkt. No. 42 at 21–22.

At oral argument in the related case California Medical Association v. Douglas, No. CV 11-9688 CAS (MANx), the Director argued that the Court cannot enjoin the

---

[1] Section 30(A) states in pertinent part that a State plan for medical assistance must:

provide such methods and procedures relating to the utilization of, and the payment for, care and services available under the plan . . . to assure that payments are consistent with efficiency, economy, and quality of care and are sufficient to enlist enough providers so that care and services are available under the plan at least to the extent that such care and services are available to the general population in the geographic area.

[2] U.S. Const. art. VI, cl. 2.

[3] U.S. Const. amend. XIV.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-9830 CAS (MANx) | | Date | March 8, 2012 |
|---|---|---|---|---|
| Title | CALIFORNIA MEDICAL TRANSPORTATION ASSOCIATION; ET AL. v. TOBY DOUGLAS; ET AL. | | | |

implementation of the challenged rate reduction for services rendered between June 1, 2011 and the date of the Court's order because such an injunction would violate California's Eleventh Amendment immunity.  The Court found this argument persuasive, holding:

> Insofar as the Director has not yet reimbursed providers for services rendered between June 1, 2011, and the date of this order, the Court finds and concludes that an injunction restraining the implementation of the rate reduction would be contrary to the State's Eleventh Amendment immunity.  In this respect, the Court is guided by the Ninth Circuit's explanation that "whether relief is prospective or retrospective in the Medicaid payment context turns on the date of service, not the date of payment."  ILC II, 572 F.3d at 661 n.19.  Under this definition, an injunction precluding the Director from reducing payments for services already rendered would constitute a retrospective award of damages in violation of the Eleventh Amendment.

On January 31, 2012, the Court ordered plaintiffs to show cause why the preliminary injunction should not be modified to exclude reimbursements not yet paid by the Director for services provided between June 1, 2011, and January 10, 2012.  Plaintiffs submitted their response to the Court's order on February 6, 2012.  Thereafter, the Court ordered the Director to reply.  The Director submitted his reply on February 15, 2012.  After considering the parties' arguments, the Court finds and concludes as follows.

## II.    DISCUSSION

Plaintiffs argue that a modification of the Court's injunction is barred by the Director's litigation conduct and by judicial estoppel.  Plaintiffs' Response at 1.  In this respect, plaintiffs assert that the following events are of significance.  On December 23, 2011, the Director announced that DHCS would implement the rate reduction pursuant to AB 97 on January 1, 2012.  In response to this announcement, plaintiffs filed an application for temporary restraining order on December 25, 2011.  DHCS filed its opposition to plaintiffs' application on December 29, 2011, and in explaining why there was no risk of irreparable harm stated:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

*O*

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-9830 CAS (MANx) | | Date | March 8, 2012 |
|---|---|---|---|---|
| Title | CALIFORNIA MEDICAL TRANSPORTATION ASSOCIATION; ET AL. v. TOBY DOUGLAS; ET AL. | | | |

Finally, Plaintiff attempts to mislead this court when it claims that it would take the Department an extraordinary amount of time for the Department to 'undo cuts once enacted.' The twenty-four week time frame discussed in the declaration submitted by the Department's prior fiscal intermediary concerned rate cuts involving more than twenty-three million claims for six categories of service, where a rate reduction had been in effect for almost two months. The instant case presents an entirely different situation in that only one category of service is at issue, and the rate reduction has not been in effect for any length of time.

Dkt. No. 32 at 4 (internal citations omitted). Therefore, according to plaintiffs, to the extent DHCS enjoyed Eleventh Amendment immunity, it waived it in this case by arguing that there was no risk of irreparable harm to plaintiffs by stating that it could and would "undo cuts." Plaintiffs' Response at 1–2.

Plaintiffs next contend that by its terms, AB 97 is not effective either retrospectively or prospectively because it provides that the rate reduction shall not be implemented until federal approval is obtained. Because the Court stayed the Secretary's approval, plaintiffs argue that DHCS has no authority to implement any rate reduction concerning NEMT services. Id. at 3.

Plaintiffs argue that the issue presented in Indepenent Living Centers v. Maxwell-Jolly, 572 F.3d 644, 661 n.19 (9th Cir. 2009) ("ILC II") is factually distinguishable because in that case the State had already reduced provider payments for approximately six weeks, pursuant to a statutory provision that had been effective for that same period before this Court issued an injunction preventing further violations of federal law. Plaintiffs' Response at 3–4. According to plaintiffs, this is distinct from the question presented in this case, which concerns whether the Eleventh Amendment would be violated by preventing the Director from reducing payments not yet made for services rendered before the Court's injunction issued. Id. at 1–2. Plaintiffs argue, in effect, that they have not suffered any injury unless and until they are paid less than they were entitled to receive absent a violation of federal law.

In support of their argument, plaintiffs rely on Cardenas v. Anzai, 311 F.3d 929 (9th Cir. 2002). In that case, the Ninth Circuit observed that the Supreme Court had narrowed the scope of the prohibition against retrospective relief in Papasan v. Allain,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-9830 CAS (MANx) | | Date | March 8, 2012 |
|---|---|---|---|---|
| Title | CALIFORNIA MEDICAL TRANSPORTATION ASSOCIATION; ET AL. v. TOBY DOUGLAS; ET AL. | | | |

478 U.S. 265 (1986).  In Papasan, the Supreme Court explained that the inquiry must focus on the purpose of the relief sought, noting:

> Relief that in essence serves to compensate a party injured in the past by an action of a state official in his official capacity that was illegal under federal law is barred even when the state official is the named defendant. . . .  On the other hand, relief that serves directly to bring an end to a present violation of federal law is not barred by the Eleventh Amendment even though accompanied by a substantial ancillary effect on the state treasury.

Papasan, 478 U.S. at 278.

Finally, plaintiffs adopt the arguments of plaintiffs in the related cases of Managed Pharmacy Care v. Sebelius, CV No. 11-9211 CAS (MANx) and California Hospital Association v. Douglas, CV No. 11-09078 CAS (MANx) insofar as those arguments have any bearing on this case.  Plaintiffs' Response at 5.

In his reply, the Director responds that in the Medicaid context, the Second, Seventh and Ninth Circuits have expressly held that for purposes of determining whether an order would have an impermissible impact on the State treasury, the inquiry "turns on the date of service, 'even if the Department has not yet tendered payment for the services.'"  Director's Reply at 1 (quoting ILC II, 572 F.3d at 661 n. 19 (citing New York City Health & Hosps. Corp. v. Perales, 50 F. 3d 129, 137 (2d Cir. 1995) ("Perales"); Wisc. Hosp. Ass'n v. Reivitz, 820 F.2d 863, 867 (7th Cir. 1987) ("Reivitz")).
The Director maintains that plaintiffs' attempt to distinguish ILC II from this case based on the timing of DHCS's implementation of AB 97 is unfounded.  Director's Reply at 4.  According to the Director, while the implementation date is merely when DHCS begins to process providers' invoices, providers were on notice of the change in the law when AB 97 was enacted by the California Legislature in March 2011.  Thus, the Director argues that plaintiffs were on notice that beginning in March 2011, subject to federal approval, reimbursement rates would be reduced for dates of service commencing June 1, 2011.  Id.

/ / /

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

*O*

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-9830 CAS (MANx) | | Date | March 8, 2012 |
|---|---|---|---|---|
| Title | CALIFORNIA MEDICAL TRANSPORTATION ASSOCIATION; ET AL. v. TOBY DOUGLAS; ET AL. | | | |

Finally, the Director argues that if plaintiffs were entitled to higher reimbursement rates for services rendered before the date of the injunction, then there would be no risk of irreparable harm justifying the issuance of the preliminary injunction. Id. at 5.

The Court finds that its injunction must be modified to exclude coverage of services rendered between June 1, 2011, and December 28, 2011, the date the Court granted the preliminary injunction. Absent such a modification, the State would effectively be required to pay funds from its treasury—the difference between full payment and the payment that would be required under AB 97—for liability that accrued before the date of the injunction.

In ILC II, the Ninth Circuit explained that in the Medicaid context, the appropriate inquiry for determining whether the Eleventh Amendment would bar relief as retrospective is the date services were rendered even if the State has not yet tendered payment for such services. 572 F.3d at 661 n. 19. The Second Circuit's decision in Perales, 50 F.3d 129, and the Seventh Circuit's decision in Reivitz, 820 F.2d 863, confirm the Ninth Circuit's position. In Perales, the Second Circuit reversed the district court's order compelling New York's Department of Social Services ("DSS") "to provide full Medicaid reimbursements to plaintiffs for medical services that were performed prior to the date of the district court's judgment, but for which reimbursement claims were not filed with DSS until after the date of judgment." Perales, 50 F.3d at 130. As here, the plaintiffs in Perales maintained that they were entitled to payment for claims properly submitted after the date of the district court's order even though services were rendered prior to that date, arguing that "the 'real injury' occurs at the time the regulation is brought into play for the purpose of denying their claims." Id. at 132–33. The Second Circuit rejected the argument, holding that "plaintiffs' proposition does not rest comfortably in the reality of the Medicaid schemes or in Eleventh Amendment jurisprudence as it has been applied to Medicaid reimbursement disputes." Id. at 136. Similarly, in Reivitz, the Seventh Circuit rejected the plaintiffs' request for injunctive relief seeking Medicaid payments for services rendered before the injunction issued, but which had not yet been paid by the state of Wisconsin. Reivitz, 820 F.2d at 867. The court found plaintiffs' claims distinguishable from the prospective relief anticipated in Ex parte Young, explaining:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-9830 CAS (MANx) | Date | March 8, 2012 |
|---|---|---|---|
| Title | CALIFORNIA MEDICAL TRANSPORTATION ASSOCIATION; ET AL. v. TOBY DOUGLAS; ET AL. | | |

> A suit under <u>Ex parte Young</u> envisages a situation in which state officials are being told in effect to leave the plaintiff alone.  The relief sought is against the officials; the state treasury is not directly affected.  But if the officials retain the money claimed by the plaintiff and deposit it in the state treasury . . . a suit asking the officials not to interfere with the plaintiff is of no use to him.  What he needs is payment.  And here it is sought from the state treasury. . . .

<u>Reivitz</u>, 820 F.2d at 867.  Here, absent a modification, the Court finds that its injunction would violate the Eleventh Amendment by effectively requiring the State to pay damages from its treasury.

The Court rejects plaintiffs' attempt to distinguish <u>ILC II</u> from this case based on the timing of DHCS's implementation of the challenged rate reduction.  As the Director explains, the implementation date merely represents when DHCS begins to process providers' invoices.  Because the proper focus is on when services were rendered, the date DHCS begins to process invoices is irrelevant.[4]

## III.  CONCLUSION

In accordance with the foregoing, the Court hereby modifies the preliminary injunction to exclude coverage of services rendered between June 1, 2011, and January 10, 2012.

IT IS SO ORDERED.

00:00
CMJ

---

[4] The Court is unpersuaded by the plaintiffs' contention that the State waived its Eleventh Amendment immunity when it argued it could quickly undo cuts once enacted.  Although it is possible for a state to waive sovereign immunity through its litigation conduct, <u>see</u> <u>New Hampshire v. Ramsey</u>, 366 F.3d 1, 16 (1st Cir. 2004), the Court finds that the State did not do so in this case.  At best, the Director's statement shows his belief that DHCS could undo any implementation of the rate reduction for services rendered after the date of injunction, and does not constitute a waiver of Eleventh Amendment immunity.